IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2023-NMCA-006

Filing Date: September 21, 2022

No. A-1-CA-38797

THE ACEQUIA COMPOUND OWNERS'
ASSOCIATION, INC.,

Plaintiff-Appellee,

v.

ORCHARD METAL CAPITAL CORP.,

Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Francis J. Mathew, District Judge

Katz Herdman MacGillivray & Fullerton PC
Frank T. Herdman
Brecken N. Larson
Santa Fe, NM

for Appellee

Holland & Hart LLP
Larry J. Montaño
Julia Broggi
Santa Fe, NM

for Appellant

OPINION

WRAY, Judge.

{1}    Defendant Orchard Metal Capital Corporation (OMC) appeals the district court's entry of partial summary judgment and an injunction in favor of Plaintiff the Acequia Compound Association (the Association), as well as the dismissal without prejudice of the Association's remaining claim. We affirm.

BACKGROUND

**{2}** The Association is a condominium association that is responsible for the administration, management, operation, and control of the common elements of the Acequia Compound Condominium (Condominium Property). The Condominium Property is located at the southern end of a public street, Halona Street, in Santa Fe, New Mexico. An easement (Condominium Property Easement) runs along the west side of the Condominium Property, connecting Halona Street to both the Condominium Property to the east and several other abutting properties to the west, including property owned at one time by the New Mexico Association of Counties (NMAC), located at 613 Old Santa Fe Trail. The language of the original Condominium Property Easement granted a "non-exclusive access-egress and underground utility easement twenty feet in width along the west boundary of the property of grantor [the Association]" and asserted that the "easement granted herein shall run with the land [and] serve only the following described property, hereinafter the dominant estate," which was defined as 613 Old Santa Fe Trail.

**{3}** Defendant OMC owns property at 621 Old Santa Fe Trail, immediately to the south of 613 Old Santa Fe Trail. The Condominium Property and OMC property do not abut; 613 Old Santa Fe Trail is located to the north of the OMC property and the Condominium Property is located directly to the east of 613 Old Santa Fe Trail. NMAC, the owner of 613 Old Santa Fe Trail at the time, granted OMC an easement (the Wedge Easement) for OMC to use the southeastern wedge of 613 Old Santa Fe Trail in return for a one-time fee of $5,000 and payment of maintenance costs. *See* Appendix A. This southeastern wedge of 613 Old Santa Fe Trail abuts (1) the western edge of the Condominium Property Easement, and (2) the northern edge of OMC's property at 621 Old Santa Fe Trail. The Wedge Easement connects Defendant OMC's property at 621 Old Santa Fe Trail to the Condominium Property Easement, giving Defendant OMC access to Halona Street.[1] The Wedge Easement was subsequently amended to ensure that

> [OMC] acknowledges and represents that [NMAC] has made no representations or warranties whatsoever regarding the access from the [Wedge Easement] beyond the boundary line of [613 Old Santa Fe Trail] to the public portion of Halona Street or the "Halona Road extension"[2] referenced in paragraph 3 of the April 10, 2013 Easement Agreement.

After obtaining the Wedge Easement, Defendant OMC removed a portion of a fence at the northeastern corner of its property, 621 Old Santa Fe Trail. The removal of the fence allowed OMC's president to enter and exit OMC's property by traveling across 613 Old

---

[1]Appendix A includes an image that depicts the long rectangular property, 613 Old Santa Fe Trail, outlined in black in the middle of the page, and the Condominium Property Easement highlighted in light grayscale to the far right. The property at 621 Old Santa Fe Trail is located directly to the south of 613 Old Santa Fe Trail and the Wedge Easement is in darker grayscale to the left of the Condominium Property Easement.

[2]The record does not indicate to what the "Halona Road extension" refers.

Santa Fe Trail, using the Wedge Easement to access the Condominium Property Easement and travel to Halona Street.

{4}     The Association filed a complaint for trespass and injunctive relief against Defendant OMC, alleging that OMC was trespassing and causing or permitting others to trespass on the Condominium Property. The Association quickly moved for partial summary judgment on the issue of OMC's trespass and sought an injunction to prevent OMC from trespassing and to require OMC to erect a fence to prevent others from trespassing. OMC filed a motion to strike the affidavit of the Association's president and alleged that she lacked personal knowledge about the number of vehicles entering the Condominium Property Easement going to or from OMC's property. In response to the Association's motion for summary judgment, Defendant OMC contended that by granting the Wedge Easement, NMAC had authorized OMC to use the Condominium Property Easement, which was next to NMAC's property at 613 Old Santa Fe Trail. After hearing argument, the district court determined that OMC had failed to rebut the Association's evidence that established OMC's trespass. Although the district court enjoined OMC and its employees and agents from trespassing, the district court declined to require the construction of a fence or other permanent barrier. As a practical matter, the district court noted that the case would go forward "at least . . . for the purpose of the establishment of the appropriate remedy as it relates to the gap in the fence." In the order granting partial summary judgment, the district court ordered that

> 1.     [OMC], including [OMC]'s employees and agents (which includes its president, David Lamb), is permanently enjoined and prohibited from using the [Condominium Property] Easement across [the Association's] property.
>
> 2.     [The Association's] request for an injunction requiring [OMC] to install a permanent barrier on the northern boundary of the [OMC] Property is not granted at this time but the request for such relief is reserved and may be raised by motion or at trial at a later date.

{5}     Following entry of the district court's order, the Association filed a second summary judgment motion and argued again that the district court should require OMC to erect a fence or other permanent barrier. Attached to this motion was another affidavit from the Association's president, as well as multiple video recordings purporting to depict traffic moving across the Condominium Property Easement to and from OMC's property (621 Old Santa Fe Trail). OMC again moved to strike the affidavit. At the hearing, the district court agreed that certain paragraphs of the affidavit were speculative and argumentative and additionally declined to consider the video recordings. Following the district court's ruling, the Association withdrew its summary judgment motion and moved to dismiss without prejudice its remaining claim related to the permanent barrier. OMC opposed the motion and argued that the dismissal should be with prejudice. During the hearing, the district court asked OMC if the Association could refile a lawsuit if the trespass continued, regardless of whether the present case was dismissed with or without prejudice. OMC responded that it was positioned to

defend against the current claims and that to dismiss without prejudice would be unfair. OMC acknowledged that the district court had the discretion to dismiss with or without prejudice but maintained that it would only be "fair to OMC to dismiss it with prejudice at this stage in the litigation." The district court ruled that OMC had failed to demonstrate that any prejudice would result from dismissal without prejudice and granted the Association's motion to dismiss without prejudice. This appeal followed.

**DISCUSSION**

**{6}**     OMC argues that the district court improperly granted partial summary judgment to the Association and wrongly dismissed the Association's remaining claim without prejudice. We review grants of summary judgment de novo. *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 14, 150 N.M. 428, 260 P.3d 414. Whether to dismiss claims with or without prejudice is within the district court's discretion, and we review that decision for abuse of discretion. *Trinosky v. Johnstone*, 2011-NMCA-045, ¶¶ 18, 20, 149 N.M. 605, 252 P.3d 829. We consider each argument in turn.

**I.      The District Court Properly Granted Summary Judgment**

**{7}**     The district court properly grants summary judgment if "there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *City of Rio Rancho*, 2011-NMSC-037, ¶ 14 (internal quotation marks and citation omitted). OMC offers several arguments to support its position that the district court improperly granted summary judgment on the Association's trespass claim. To put the Association's trespass claim in context, we briefly explain the connection between trespass and easements. "The gist of an action of trespass to real property is in tort for the alleged injury to the right of possession." *Pacheco v. Martinez*, 1981-NMCA-116, ¶ 14, 97 N.M. 37, 636 P.2d 308. New Mexico law explains that "[a]n easement creates a nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." *City of Rio Rancho*, 2011-NMSC-037, ¶ 33 (quoting Restatement (Third) of Prop.: Servitudes § 1.2(1) (2000)). A trespass claimant, like the Association, must prove that the defendant had no right to enter and use the land. But if an easement grants the right to enter and use land, use of that land in accordance with the easement causes no injury to the right of possession, and no action for trespass exists.

**{8}**     In the present case, to make a prima facie case for summary judgment, the Association had to demonstrate that the undisputed material facts established that OMC had no right to enter and use the Condominium Property Easement. *See City of Rio Rancho*, 2011-NMSC-037, ¶ 14 ("The party moving for summary judgment has the initial burden of establishing a prima facie case for summary judgment by presenting such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." (internal quotation marks and citation omitted)). In its response, OMC primarily contends that as a matter of law, OMC "may use the [Condominium Property Easement] for ingress/egress [across 613 Old Santa Fe Trail] by virtue of the [Wedge] Easement." The Association responds that the undisputed facts

show that the Wedge Easement, "permitting OMC to cross over a tiny portion of 613 Old Santa Fe Trail, cannot, as a matter of law," create a right for OMC to use the Condominium Property Easement. We agree with the Association and explain.

**{9}** An easement that is "created to benefit a dominant estate cannot be expanded, changed, or modified without the express consent of the servient estate." *Mayer v. Smith*, 2015-NMCA-060, ¶ 29, 350 P.3d 1191 (omission, internal quotation marks, and citation omitted). An easement can be either appurtenant or in gross. *See Luevano v. Group One*, 1989-NMCA-061, ¶ 9, 108 N.M. 774, 779 P.2d 552. An appurtenant easement is generally granted to an adjoining property owner for the benefit of the adjoining property. *See Skeen v. Boyles*, 2009-NMCA-080, ¶ 23, 146 N.M. 627, 213 P.3d 531. In the present case, the parties do not dispute that the Condominium Property Easement is an easement appurtenant to the property at 613 Old Santa Fe Trail, granted for the benefit of that property. The dominant estate for purposes of the Condominium Property Easement is 613 Old Santa Fe Trail, and the servient estate is the Condominium Property. "The owner of the dominant estate cannot change the extent of the easement or subject the servient estate to an additional burden not contemplated by the grant of easement." *Kikta v. Hughes*, 1988-NMCA-105, ¶ 14, 108 N.M. 61, 766 P.2d 321.

**{10}** Along these lines, "[a]n easement can be used only in connection with the estate to which it is appurtenant." 28A C.J.S. *Easements* § 226 (2022); *see Weeks v. Wolf Creek Indus.*, 941 So. 2d 263, 269 (Ala. 2006) ("To be sure, if the grant is for the benefit of some particular land it can[]not be used to accommodate some other tract of land adjoining or lying beyond." (alteration, internal quotation marks, and citation omitted)); *Zeh v. Karker*, 351 N.Y.S.2d 478, 479 (N.Y. App. Div. 1974) ("It is well settled that a right of way granted in connection with one parcel may not be used for the benefit of any land other than that to which it was made appurtenant when it was granted."); Restatement (Third) of Prop.: Servitudes § 4.11 (2000) ("Unless the terms of the servitude . . . provide otherwise, an appurtenant easement or profit may not be used for the benefit of property other than the dominant estate."). When the holder of a dominant estate also owns a separate estate, which is not appurtenant to the easement, the holder of the dominant estate generally cannot use the easement to reach that separate estate, absent some right granted by the easement. *See Jordan v. Rash*, 745 S.W.2d 549, 553 (Tex. App. 1988) ("Unless the wording of an easement creates a more extended right of use, the grantee cannot use it to benefit other premises owned by him or others."); *Lichteig v. Churinetz*, 519 A.2d 99, 102 (Conn. App. Ct. 1986) ("An easement cannot be used for the benefit of land other than the dominant estate."); *Cleve v. Nairin*, 264 S.W. 741, 742 (Ky. Ct. App. 1924) ("There is no dissent from the rule that an easement for the benefit of a particular piece of land cannot be enlarged and extended to other parcels of land, whether adjoining or distinct tracts to which the right is not attached."). In the present case, OMC claims the right to use the Condominium Property Easement based on (1) the language of the Condominium Property Easement, and (2) cases from other jurisdictions holding that dominant easement holders can permit use of the servient property under some circumstances.

**{11}**    Beginning with the language of the easement, OMC argues that the Condominium Property Easement does not limit use of the easement "for a specific purpose or a specific number of people or vehicles," and its purpose "is expressly stated as 'non-exclusive access-egress.'" We agree with OMC that "the purpose of the access would include access in order to use the easement in a manner that is reasonably necessary for the full enjoyment" of the Condominium Property Easement by the dominant estate (613 Old Santa Fe Trail). *See City of Rio Rancho*, 2011-NMSC-037, ¶ 33. We disagree, however, that generally an easement permits all uses that it fails to specifically limit or prohibit, and here, the Condominium Property Easement is not silent. The language of the Condominium Property Easement not only does not give the dominant estate (613 Old Santa Fe Trail) the right to allow third parties to use the easement to benefit other premises, it explicitly states that it "shall serve only" the dominant estate (613 Old Santa Fe Trail). Thus, the language of the Condominium Property Easement does not grant "a more extended right of use" in order to benefit premises other than the dominant estate (613 Old Santa Fe Trail). *See Jordan*, 745 S.W.2d at 553; *see, e.g.*, *Dethlefsen v. Weddle*, 2012-NMCA-077, ¶ 12, 284 P.3d 452 ("[T]he written language of an easement should be conclusive.").

**{12}**    Defendant OMC cites authorities in which the dominant estate was permitted to allow third parties to use an easement in order to benefit the dominant estate. *See Weeks*, 941 So. 2d at 267, 269, 271-72; *Fruth Farms, Ltd. v. Vill. of Holgate*, 442 F. Supp. 2d 470, 474-75, 477 (N.D. Ohio 2006); *Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 581, 584, 597 (Tenn. Ct. App. 2005); *Gowen v. Cote*, 875 S.W.2d 637, 639-42 (Mo. Ct. App. 1994). These cases address the use of the easement either by guests or invitees to a dominant estate or for the enjoyment of new developments on the dominant property. OMC seeks to extend these cases to permit the dominant estate to grant others access to the easement across the servient estate in order to reach a different property. OMC argues that the dominant estate (613 Old Santa Fe Trail) benefits from OMC's use, because OMC agreed to pay $5,000 and expenses for the Wedge Easement. As we explain, extending these cases as OMC suggests—fee notwithstanding—disregards the general rule that easements cannot be used to benefit property that is not appurtenant to the easement. *See* 28A C.J.S. *Easements* § 226. Two cases illustrate the distinction between this general rule and the cases on which OMC relies.

**{13}**    OMC has repeatedly cited *Arcidi v. Town of Rye*, 846 A.2d 535 (N.H. 2004). In *Arcidi*, the dominant easement owner, identified as VPI, had an easement to use the plaintiff's property to access VPI's property (access easement). *Id.* at 697, 699. VPI additionally gave the town an easement to build a pump station on VPI's property (pump station easement). *Id.* at 697. The plaintiff argued that the town had no right to use the access easement, and the *Arcidi* court held that "VPI, as the dominant estate holder, may authorize others, such as the town, to use the appurtenant easement over the plaintiff's property[, and t]hus, the town has the right to use the [appurtenant] easement over the plaintiff's property because VPI has permitted it to do so." *Id.* at 698, 701. The *Arcidi* court applied this legal principle because the factual circumstances supported it; the third party, the town, used the easement over the plaintiff's property in order to

access its development, which was on the dominant estate. In the present case, OMC used the Condominium Property Easement to cross the dominant estate (613 Old Santa Fe Trail) to access a different property (621 Old Santa Fe Trail).

{14}    Occupying the other, more relevant sphere is *Southwick v. Planning Board of Plymouth*, in which a town held an easement over private roads that were appurtenant to a lot owned by the town. 839 N.E.2d 351, 353, 355 (Mass. App. Ct. 2005). The lot owned by the town abutted another parcel that was landlocked with no right to access the private roads. *Id.* at 352-53. A developer intending to build a subdivision on the landlocked parcel obtained a separate easement from the town to access the lot owned by the town, but access to the proposed subdivision would have also required use of the town's appurtenant easement over the private roads. *Id.* at 353-54. The proposed subdivision developer relied on the minimal burden it claimed would be placed on the easement by extending its use for the benefit of two additional lots. *Id.* at 354. The *Southwick* court concluded that the developer's argument confused "the question of *overburdening* an easement by frequency, type or intensity of use" with "the question of which land may enjoy the benefit of an appurtenant easement." *Id.* (emphasis added). The *Southwick* court explained that the proposed subdivision developer had "demonstrated no legal right to use any portion" of the town's road easement. *Id.* at 355 n.13.

{15}    The present case more closely resembles *Southwick* than *Arcidi*. The *Arcidi* court and the courts in the other cases cited by OMC considered whether a dominant easement owner could allow others to use the easement to access the dominant easement owner's property. In the present case, however, the dominant easement owner (613 Old Santa Fe Trail) has allowed OMC to cross the Condominium Property Easement to access property that is not the dominant estate or appurtenant to the Condominium Property Easement. This scenario is similar to *Southwick*, in which the town permitted the proposed subdivision developer to use the town's easement over the private roads, together with a separate easement over the town's property, to reach the landlocked subdivision property. The separate easement over the town's property did not give the developer the right to use the private road easement, which had been granted to the town by the servient estate solely to access the town's property. Just as the developer in *Southwick* could not use the private road easement because the landlocked property was not appurtenant to the private road easement, OMC has no right to use the Condominium Property Easement—notwithstanding the Wedge Easement—to reach 621 Old Santa Fe Trail, because 621 Old Santa Fe Trail is not appurtenant to the Condominium Property Easement. Because, as a matter of law, OMC had no right to use the Condominium Property Easement in order to reach 621 Old Santa Fe Trail, we reject OMC's primary basis for challenging the district court's grant of summary judgment.

{16}    OMC additionally contends that disputed material facts demonstrated that OMC's use of the Condominium Property Easement was reasonable and challenges (1) the quality of the evidence submitted by the Association to support summary judgment; (2) the Association's failure to address OMC's affirmative defenses relating to the impact of

the Wedge Easement, failure to join the owners of 613 Old Santa Fe Trail, and the acts or omissions of other parties; and (3) OMC's request to conduct additional discovery. Each of these arguments is based on the relevance of additional disputed facts or a need for more evidence. Our analysis of the Association's trespass claim, however, relies entirely on OMC's undisputed use of the Condominium Property Easement and concludes OMC had no legal right to do so. No additional facts or evidence are relevant. OMC had no legal right to use the easement, and the district court properly granted summary judgment on the Association's trespass claim. We therefore affirm the district court.

## II. The District Court Did Not Abuse Its Discretion in Dismissing the Association's Remaining Claim Without Prejudice

{17}   OMC additionally argues that the district court abused its discretion to grant the Association's motion to dismiss the remaining claim without prejudice. "An abuse of discretion will be found when the district court's decision is clearly untenable or contrary to logic and reason" or when the district court "exercises its discretion based on a misunderstanding of the law." *Trinosky*, 2011-NMCA-045, ¶ 23 (alteration, internal quotation marks, and citations omitted). OMC contends that "[t]he district court abused its discretion by granting [the Association's] motion to dismiss without prejudice because it is 'clearly untenable' and 'contrary to logic and reason.'" Specifically, OMC argues that "[t]he equities in this case favor[ed] dismissal with prejudice," because (1) the Association could not produce evidence to support its claim to force OMC to build a barrier; (2) OMC had already expended significant time and money in its defense; (3) the Association hoped to refile before a more favorable judge; and (4) the Association identified no equities supporting dismissal without prejudice. OMC's arguments do not suggest that the district court misapprehended the law, so we consider only whether the decision to dismiss without prejudice was contrary to logic and reason.

{18}   Rule 1-041(A)(2) NMRA permits the district court to dismiss an action "on motion of the plaintiff . . . upon such terms and conditions as the court deems proper." According to the rule, "[u]nless otherwise specified in the order, a dismissal under this paragraph is without prejudice." *Id.* The district court indicated at the hearing that it saw no prejudice to OMC in granting the Association's motion, because regardless of whether the claim was dismissed with or without prejudice, the Association could refile a trespass claim if trespass by third parties was ongoing. The district court's ruling was permissible under Rule 1-041(A)(2) and not contrary to logic and reason. We therefore affirm the grant of the Association's motion to dismiss the remaining claim without prejudice.

## CONCLUSION

{19}   For the reasons stated herein, we affirm the district court.

{20}   **IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**

## APPENDIX A

EXHIBIT C

RP- Page 71

Land Records Corp. SFTC ALB11195 SF 1716105.001

## PUBLIC NOTICE

THIS SURVEY IS BASED ON THOSE RECORDED DOCUMENTS NOTED HEREON. CITY OF SANTA FE STAFF MUST APPROVE ALL DOCUMENTS SUBMITTED WITH AN APPLICATION FOR A BUILDING PERMIT AND MAY REQUIRE SUBMITTAL OF ADDITIONAL DOCUMENTATION TO PROVE LEGAL LOT OF RECORD.

### REFERENCE AND BASIS OF BEARINGS:

PLAT OF SURVEY FOR ALAN AND TONIA GOULD, PREPARED BY SALVADOR E. YAGI, N.M.P.S. NO. 4403, DATED JANUARY 21, 1997. BEARINGS & DISTANCES IN PARENTHESIS FROM THIS SURVEY.

WARRANTY DEED FROM ALAN M. GOULD AND TONIA GOULD, HUSBAND AND WIFE, TO NEW MEXICO ASSOCIATION OF COUNTIES RECORDED IN THE OFFICE OF THE COUNTY CLERK, SANTA FE COUNTY, NEW MEXICO ON DECEMBER 31, 1998 IN BOOK 1585, PAGES 888-889, AS INSTRUMENT NO. 1055.570.

762019

### LEGEND

⊕ CAPPED REBAR FOUND UNLESS OTHERWISE SHOWN.
—U→ UTILITY POLE WITH OVERHEAD UTILITY LINE.
Ⓦ WATER METER.
Ⓖ GAS METER.
Ⓔ ELECTRIC METER.
Ⓐ AIR CONDITIONING UNIT
· CLEANOUT
◎ SANITARY SEWER MANHOLE

SCALE: 1"=30'

STRUCTURE
613 OLD SANTA FE TRAIL

ASPHALT DRIVE



STATE OF NEW MEXICO } SS
COUNTY OF SANTA FE }

THE FOREGOING INSTRUMENT WAS ACKNOWLEDGED BEFORE ME THIS ___ DAY OF _____, 2013.

_____       _____
NOTARY PUBLIC                   MY COMMISSION EXPIRES

OFFICIAL SEAL
CELIA MEDRANO
NOTARY PUBLIC
STATE OF NEW MEXICO

### SURVEYOR'S CERTIFICATION

I, JAMES J. MEDRANO, A NEW MEXICO REGISTERED PROFESSIONAL SURVEYOR CERTIFY THAT I CONDUCTED AND AM RESPONSIBLE FOR THIS SURVEY; THAT THIS SURVEY IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT THIS SURVEY AND PLAT MEET THE MINIMUM STANDARDS FOR SURVEYING IN NEW MEXICO.

I FURTHER CERTIFY THAT THIS SURVEY IS NOT A LAND DIVISION OR SUBDIVISION AS DEFINED IN THE NEW MEXICO SUBDIVISION ACT AND THAT THIS IS A BOUNDARY SURVEY PLAT OF AN EXISTING TRACT OR TRACTS.

_____       _____
JAMES J. MEDRANO                DATE
N.M.P.S. #____

LANDMARK SURVEYS
P.O. BOX 2714
SANTA FE, NM 87502
TEL. (505) 473-1511
FAX (505) 473-0964
EMAIL: landmarksurveys@gmail.com

State of New Mexico
County of Santa Fe } SS

I HEREBY CERTIFY THAT THIS INSTRUMENT WAS FILED FOR RECORD ON THE ___ DAY OF _____ A.D. 20__, AT ___ O'CLOCK ___ M., AND WAS DULY RECORDED IN BOOK 762, PAGE 019 OF THE RECORDS OF SANTA FE COUNTY.

WITNESS MY HAND AND SEAL OF OFFICE
GERALDINE SALAZAR
COUNTY CLERK, SANTA FE COUNTY, NM

_____
DEPUTY

U.P.C. # 1-054-099-305-431
INDEXING INFORMATION FOR COUNTY CLERK

### AMENDED
### BOUNDARY SURVEY PLAT FOR
### PONDEROSA CAPITAL, LLC
### LOT 10, BLOCK 88 KINGS OFFICIAL MAP
### 613 OLD SANTA FE TRAIL
### WITHIN PROJECTED SECTION 25, T. 17 N., R. 9 E., N.M.P.M.
### SANTA FE COUNTY, NEW MEXICO

PROJECT NO. 98-53 BDY.       PLAT NO. M-533.